WESTERN DIST.
October, 1840.

BROSNAHAM
ET AL.
vs.
TURNER.
Acts of sale
*sous seing privé*
and not being
recorded in the
parish where the
property is situ-
ated, are inad-
missible as evi-
dence of title to
immoveable pro-
perty.

---

### BROSNAHAM ET AL. *vs.* TURNER.

#### ON A REHEARING.

Where a judgment, is set up as the basis of the defendant's title in a petitory action against him, its validity cannot be examined, or inquired into collaterally. Never having been reversed or annulled, it must have its full force and effect.

Where a judgment, writ of execution and a sheriff's sale are shown in support of a title, it necessarily creates a strong presumption in favor of the title ; and is *prima facie* evidence that the formalities of law have been complied with.

WESTERN DIST.

*October*, 1840.

BROSNAHAM
ET AL.
*vs.*
TURNER.

The law gives no effect to acts of alienation against *third persons* in general, unless they have been duly enregistered. By *third persons* must be understood all persons who are not parties to a contract, by which their *interest* in the thing conveyed is sought to be affected.

So, the debtor whose property is sold at sheriff's sale, or those who claim under him, cannot object that the purchaser's title was not legally conveyed or transferred to the defendant who claims under it.

In this case, a rehearing having been granted, it was again argued at this term.

*Elam* and *Barton*, for the plaintiffs. Two important questions are submitted for the solution of the court.

1. Have the plaintiffs shown title in themselves as the heirs and legal representatives of Antonio Villaverde ?

2. Was Villaverde ever legally divested of *his title* to the land claimed ; and especially by the proceedings in the suit of Petit against him, and the sheriff's sale consequent thereon ?

I. The petition sets forth the right and capacity of the plaintiffs, " as the heirs and legal representatives of Antonio Villaverde, and as such the legal owners of the tract of land" in question.

The defendant excepted to the plaintiffs' capacity to sue as the heirs, &c., of Villaverde, and the issue thus made was tried and passed upon in the court below. The exception was dismissed and there was an answer to the merits, upon which the cause proceeded to final judgment.

The exception put at issue the validity of the will of Villaverde, which is in evidence as admitted to probate under act of the Territorial Government of Florida ; and the right of the plaintiffs to take under it. This will, we contend, is valid. It is true the Legislative Council of Florida could not make a will for Villaverde, but they could ratify, or rather *legalize his* will, so far at least as the form is concerned ; in all other respects it bears intrinsic evidence on *its face*, as containing the last will and dispositions actually intended to be made of all his estate by the testator. All exceptions as to want of form can be remedied by a subsequent law. The

WESTERN DIST.
October, 1840.

BROSNAHAM
ET AL.
vs.
TURNER.

forms and solemnities of a will are the creatures of the law, and intended to afford the evidence of the testator's will. This has been fully accomplished in the present case ; and it being fully shown that the Legislative Council could and did by the act in question establish and render valid the will under consideration, and by doing so, clothed it with all the formalities prescribed for the validity of wills in that place ; and if it could have any effect there it must have effect here. *Louisiana Code*, 1598, 1681, 1682 ; 5 *Martin, N. S.*, 48. Constitution of the United States, *article 4, section* 1. In establishing the proposition that the will of Villaverde was legal and valid in Florida, and duly proved and ordered to be made executory there, it follows that it is good and valid and must operate on the rights to real property here. The legal capacity of the heirs to take under the will is, therefore, fully established.

II. Having established the validity of the will and the right of the plaintiff's to sue and maintain this action under the authority of the will, it only remains to inquire whether Villaverde was ever legally divested of his title to this land.

The record and judgment, execution and sheriff's sale, in the suit of Petit *vs.* Villaverde, are relied on to show that he was not the owner of this land at his death ; and that by the proceedings in that suit and the sheriff's sale, he was legally and completely divested of all title.

On a close examination of this record it will be seen there is nothing to support the pretended sheriff's sale. Not even, a citation is shown, which is the very foundation of every judgment.

The validity of this judgment is put directly at issue. The defendant claims and sets up title under it in virtue of the sheriff's sale to Thompson. In doing this he is himself as much a party to that judgment as the plaintiffs ; and if he can be permitted to resort to the entire proceedings to establish the existence and certainty of the judgment, the plaintiffs are entitled to the benefit of that evidence to show that the court which rendered it was without jurisdiction ; that

WESTERN DIST.
October, 1840.

BROSNAHAM
ET AL.
vs.
TURNER.

the judge acted without legal authority, and the judgment itself, on the face of it, is a nullity. Such a judgment rendered without citation or appearance, is so utterly void and imports such absolute nullity that any one the least interested in opposing its effects, may have its nullity pronounced. *Bernard* vs. *Vignaud*, 1 *Martin, N. S.*, 1 and 9; *Thompson* vs. *Tolmé*, 2 *Peters*, 163; 9 *Wheaton*, 548.

1. The Parish Court was without jurisdiction, either as to the person of the defendant, or the subject matter of the suit.

By the act of 1807; 3 *Martin's Digest*, 216, parish judges are only authorized to summon persons before them who are residents of the parish. If Villaverde was not a resident of the parish of Concordia, the judge had no right to issue the order to appear in that suit. It neither appears by the pleadings in that case, which was absolutely necessary to give jurisdiction to the court, or by evidence. On the contrary, the recital in the certificate of confirmation of his title to this land, shows that Villaverde resided in Baton Rouge, from March, 1807, to July, 1808, and there is nothing to show he ever resided in Concordia.

2. Admitting that the petition alleged his residence to be in Concordia, the court was without legal authority to act until legal service of a copy of the petition and citation be shown. It was also necessary to show that the cause of action *arose* in the parish of Concordia to give the Parish Court jurisdiction, which is exclusively local and confined to the parish. The words of the act of 1807, section 10, are that Parish Courts have jurisdiction to decide all suits which may *arise* within the limits of the parish. See the jurisdiction of the Parish Court of New-Orleans, although it has concurrent jurisdiction with the first District Court, its locality is circumscribed and confined to suits and actions which *originate* in the parish. See 4 *Martin*, 670; 6 *Idem*, 9; 9 *Idem*, 560. See act of 1813; 1 *Moreau's Digest*, 338.

3. In forced alienations the forms of law must be strictly pursued. Is there any evidence in this record to show that

WESTERN DIST.
October, 1840.

BROSNAHAM
ET AL.
vs.
TURNER.

the sheriff's sale in question has been made according to law? One thing is certain, Villaverde resided in Pensacola in 1813, before this sale was made, and continued to reside there until his death in 1821; he was consequently an absentee when his land was sold in Concordia. The law requires the sheriff's demand of payment to be " left at the usual place of the party against whom such writ is directed." Three days afterwards he may seize property ; " shall cause a list of the articles seized to be given to the debtor, if he may be found, or left at his usual place of abode, with a notice to appear and name an appraiser of the property seized." Acts of 1805; 2 *Moreau's Digest*, 168. "In case the defendant should refuse to name an appraiser, such nomination shall be made by the sheriff." *Civil Code*, of 1808, *article 3, page* 490. These are all formalities absolutely required by law in forced alienations of property; are not accidental but essential, and of the essence of the sale ; and the return of the sheriff should show the observance thereof.

4. Villaverde being an absentee in 1814, a curator should have been appointed to his property, contradictorily with whom the seizure and sale should have been made. It is shown by the monition law, passed in 1834, that purchasers at sheriff's sales must guard against all illegalities and informalities, whether before or after judgment ; and nothing can make valid a sale under a judgment, when the party was not duly cited. So, where there has been no service of citation, and where the party was not before the court, either by service of citation regularly or voluntarily, the sale under such judgment is a nullity : *Abat* vs. *Holmes*, 8 *Martin, N. S.*, 145 ; *Donaldson* vs. *Dorsey's Syndic, 5 Idem.*, 656 ; 1 *Idem.*, 9 ; 5 *Martin*, 464.

5. The whole record of the suit, in which the land in question was attempted to be sold, was put at issue in this case, and pleaded by way of a peremptory exception, as *res judicata*. The plaintiffs had a right to object to the sufficiency of this record and the matters it contained, to support the defendant's plea.

WESTERN DIST.
October, 1840.

RROSNAHAM
ET AL.
vs.
TURNER.

*First.* They object and say it is a nullity, for want of citation, not showing any appearance or answer of the defendant, or that any judgment by default was ever taken against the defendant therein.

*Second.* That no legal judgment was ever rendered on the petition in said suit ; and if rendered, it was not legally notified to the defendant.

*Third.* The judgment was not docketed, as the law requires, to be binding on the defendant's property, so as to authorize the issuing of a *fieri facias.*

*Fourth.* It no-where appears that the property was appraised or duly advertised. The description of the property is too vague and uncertain. From the sheriff's return, the only evidence of advertisement we have at all, he says, " I have, this 19th day of August, 1814, seized eight hundred acres of land, more or less, at Point Pleasant, about seventy-five miles above the town of Vidalia, as the property of the within defendant." " Land sold to J. Thompson for one hundred dollars, on twelve months' credit." In the deed of sale, it is true, the sheriff says, " that this adjudication was made according to law." Had this made part of his return, the case might have been different. But as it is, the whole proceedings in making the sale are insufficient, in a forced alienation of property, to give title to the purchaser : See the case of *M'Donough* vs. *Gravier's Curator,* 9 *Louisiana Reports,* 531.

Point Pleasant presents twenty miles front on the Mississippi. Turner, the present defendant, acquired the title he sets up, from Thompson, which calls for land fifteen miles below Point Pleasant. But Turner had no sooner taken possession under his sale from Thompson, in 1820, than Villaverde appeared and commenced suit for the land ; and the title from Thompson was not recorded in the parish, until after the petition was filed, and but one day before service of citation ; so that in 1814, Villaverde was residing in Pensacola, without any knowledge that his land was sold, and in 1820 he repaired to Concordia and instituted suit. In the following year and before the suit was brought to a trial, he died, and it was shortly afterwards dismissed. In this suit,

WESTERN DIST.
October, 1840.

BROSNAHAM
ET AL.
vs.
TURNER.

there was no other evidence of the validity of a sheriff's sale produced than has since been filed. At that time, only six years after the sale, the defendant relied simply on the sheriff's return, for a compliance with all the formalities of law. "Where is a man, at this time of day," says the defendant, in his answer to that suit, "to look for appraisements, advertisements, &c.;" evidently despairing of ever showing any thing like a legal sale.

6. The legal possession of the land never passed out of Villaverde and his legal representatives; and the defendant must show title, in order to be maintained in possession, of sufficient dignity to divest the plaintiffs of the *actual* as well as legal possession of the land.

Under the *Civil Code* of 1808, possession implies a right and a fact, a right to enjoy, and next the right of property and the fact of the real detention of the thing: *Civil Code*, p. 478, *art.* 19. The confirmation of the title to Villaverde, is evidence of his *actual* possession and the *fact* of his real detention. "The actual possessor, when he proves that he was formerly in possession, shall be presumed to have been in possession, also, during the intermediate space of time, until the contrary is proved:" *Idem.*, 484, *art.*, 42; *Idem.*, 476, *art.*, 18. Henry Turner purchased of Thompson. He showed no possession up to his death; and nothing has since transpired to change things, unless it can be found in the fact of altering the word *continuance* of Villaverde's suit, after his death, and changing it into a *dismissal*. The defendant, as heir of Henry Turner, can inherit no better right. He succeeded to the action instituted by Villaverde against Henry Turner, and is responsible for what was done; and the record shows that on 14th March, 1820, Villaverde instituted suit against Henry Turner, to get back his land which was claimed under the sheriff's sale. On the 29th March, Turner for the first time recorded his title from Thompson, claiming a tract of land only "sixty miles above the post of Concordia." Turner now sets up title, and this is the first evidence of his possession. After issue joined, the death of the plaintiff and defendant were suggested with leave to

WESTERN DIST.
October, 1840.

BROSNAHAM
ET AL.
vs.
TURNER.

proceed in the name of their legal representatives. Subsequently, at a regular term of the court, the cause was ordered to be continued and was so entered on the regular minutes; but the continuance appears to have been erased and the word *dismissed*, written. There is no judgment of *dismissal* signed, and what is here written and shown by the defendant is presumed to be a forgery. The suit was never dismissed. 2 *Louisiana Reports*, 291.

7. The suit of 1820 could not be legally dismissed until Turner's heirs came in and made themselves parties, and then on failure of the plaintiffs to prosecute, the suit might be dismissed. This not having been done, the suit remained in fact and was merged in the present one in 1836. Thus it will be seen that Villaverde and his representatives never were *legally out of possession;* and will any one say that the *title* of Henry Turner is of itself sufficient to eject the plaintiffs from the premises, or to hold them ; Villaverde and his representatives being in the legal and actual possession. It is the right of possession, annexed to the fact of possession, that gives the defendant an advantage over the plaintiff in a petitory action. A knavish possessor is not regarded as a possessor. 2 *Domat*, (English edition) 459.

On a full examination of the law and the authorities here adduced, the court must irresistibly come to the conclusion :

1. That from the illegalities and informalities in the suit of Petit, both before and after the pretended judgment, the title to the land claimed never passed out of Villaverde.

2. That the rights of the plaintiffs, as the heirs and legal representatives of Villaverde, were established by the order overruling the defendant's exception to the right of the plaintiffs to sue as well as by the evidence and pleadings ; therefore, the plaintiffs are the true and legal owners of the land claimed.

3. That the defendant not having established his possession by title, must be a possessor in bad faith, and should be condemned to restore possession of the premises, and the right reserved to the plaintiffs to demand from the defendant the fruits.

WESTERN DIST.
October, 1840.

BROSNAHAM
ET AL.
vs.
TURNER.

*Stacy,* for the defendant, contended that this being an action for the revendication of real property in Louisiana, by persons calling themselves heirs and legal representatives of A. Villaverde, both their *capacity* to inherit, to appear in court, and stand in judgment, and their right to sue and recover the property claimed, are put at issue, and must be governed and decided by the laws of Louisiana. See *Story's conflict of laws, pages* 24 *et seq;* 398 *et seq. Louisiana Code, article* 9 *et seq.* 483, 1456 *et seq.,* and the nullity absolute 11, 12, 19. Applying this rule to the present case, it will be seen that the will is null and void ; not having been made in conformity with the laws of this state in any respect. This is conclusive as to the plaintiffs' right of recovery, if they were heirs and had capacity to take under the will. Further, the will has never been admitted in this state, nor has it been proved, or its execution ordered. The grant of letters of administration to Brosnaham was a judicial act ; a judgment of a court, which coming from another state or territory, should have been certified according to the act of congress.

2. The defendant's title is derived from a sheriff's sale to J. Thompson, who sold to H. Turner in 1819, by private act, which was recorded in March, 1820, sixteen years before the present suit. Under this sale, H. Turner and the defendant, his heir, held under just title and in good faith, the peaceable and uninterrupted possession of the land in question. This is fully sufficient for prescription against even the real owner, if present, or against a vacant estate. For from the death of Villaverde, in 1821, the succession was vacant and the prescription of ten years run against it. It was unclaimed during that time ; indeed for fifteen years. *Louisiana Code, article,* 3442 *et seq.* 3492, 1088 ; 9 *Louisiana Reports,* 135.

3. But was prescription interrupted, or did Villaverde ever reclaim the land? On the 14th March, 1820, he brought suit against H. Turner to recover the land and died the next year. At February term, 1822, the death of both parties was suggested, and an order of court entered that the suit be revived in the name of both parties. By the death of both

parties the suit terminated, although it might have been
revived, but was not. At February term, 1823, the minutes
of the court show that the suit was *dismissed*, or striken from
the docket or record of the court. From this circumstance
we may deduce the following conclusions ; first, the suit ter-
minated for want of parties ; second, it was never revived,
no person appearing for the plaintiff, &c. ; third, no person
claimed Villaverde's succession until 1836 ; fourth, it was a
vacant succession, no person claiming it for fifteen years, and
prescription runs after ten years, &c. ; and fifth, what-
ever may have been the effect of the act of the Legislative
Council of Florida, until the institution of this suit, the will
being a nullity, and the two colored heirs being incapable of
inheriting or prohibited by law, the succession was to all in-
tents and purposes a vacant one. If, as is contended, that
act fully conferred upon the plaintiffs the capacity to take as
legal and testamentary heirs, still it could have no retroac-
tive effect, nor could it interfere with or divest the right of
third persons legally acquired before its passage. *Louisiana,
Code*, 1024, 1189 ; 9 *Louisiana Reports*, 135 ; 8 *Idem*, 414.

4. But the defendant has a good and legal title to this
land, Villaverde was legally divested of all title by the
sheriff's sale, under execution which issued on a judgment
against him. This judgment and execution have been pro-
duced in evidence, and is all that is required to support the
authority of a sheriff's sale. 6 *Martin, N. S.*, 462; 4 *Louisiana
Reports*, 12 ; 4 *Wheaton* 506 ; 1 *Peters* 340; 10 *Idem* 476. This
judgment cannot be attacked collaterally ; and any defects or
irregularities in the proceedings, anterior to its rendition, does
not affect the title which the purchaser acquires at the
sheriff's sale under it. 2 *Peters* 163, 166 ; 6 *Idem* 729 ; 13
*Louisiana Reports*, 437 ; 5 *Martin, N. S.*, 219.

5. This judgment is, however, attacked in this suit and its
validity objected to ; *first*, because it was rendered without
previous citation ; *second*, without answer filed, or default
previously taken ; *third*, that it does not state in whose favor or
against whom it was rendered, and contains no reasons ; and
*fourth*, that the amount is stated in figures, instead of being

WESTERN DIST.
October, 1840.

BROSNAHAM
ET AL.
vs.
TURNER.

written at full length. In answer to all this ; in the first place, the record and officer's return expressly state, that the defendant Villaverde was *notified* or cited. In relation, however, to all the defects alleged, the evidence adduced does not establish the negatives incumbent on the plaintiffs to prove, that is, that all the legal formalities were not observed, to rebut the presumption of *omnia rite acta.* The papers in the record of the suit of Petit *vs.* Villaverde, on which the plaintiffs rely and have offered in evidence, are merely certified to be " true copies from the originals," and do not even purport-to be a true copy of the whole record of the suit. This was not produced by the plaintiffs ; they only used such parts as suited their purpose. If it had been all offered, it would have been shown that the defendant was legally cited, and filed an answer. It would have been been a work of supererogation in us to have produced the record, until the plaintiffs gave some evidence to rebut the presumption of law in their favor. *Stubit præsumptio donee in contraria probetur* ; 9 *Louisiana Reports,* 542.

6. The numerous objections to the execution and proceedings under it, sheriff's sale, &c., are all easily answered from the papers of the suit in evidence, as the judgment was duly rendered ; execution issued more than eighteen months afterwards ; the land was seized and sold after a lapse of forty days, in the parish where the judgment was obtained. The sheriff returns that the land was exposed to sale according to law, and his deed of sale recites " that all the formalities of the law had been complied with ; " all of which is *primâ facie* evidence of its correctness, and the party denying it must prove the contrary. 9 *Louisiana Reports,* 542 ; 3 *Idem.,* 476 ; 4 *Wheaton,* 500 ; 10 *Peters,* 449. Villaverde's title was therefore divested by this sale, and the defendants are the legal owners.

7. We come now to the last part of the case which induced this court to render a judgment of non-suit. This was done on the bill of exceptions taken by the plaintiffs, on the trial, to the admission of four private acts of sale of the premises to the defendant. In the first place, this point was

WESTERN DIST.
October, 1840.

BROSNAHAM
ET AL.
vs.
TURNER.

not noticed in any of the arguments, written or oral, and the court should have considered it as abandoned : 1 *Martin, N. S.*, 299. These acts of sale were executed between the defendant and his brothers, sisters, and mother, as inheriting from Henry Turner, and in which they style themselves his heirs. This is purely a transaction among the heirs of Henry Turner, in which they sell out their undivided interests in this tract of land to the defendant, also an heir. These acts were under private signature, and their execution was proved at the trial, but they were objected to, because not recorded in the parish where the land is situated, according to *arts.* 2242 and 2417 of the *Louisiana Code.* The want of his recording can only affect creditors, *bona* purchasers and *third* persons in general. The plaintiffs do not claim as creditors, or *bona fide* purchasers from Turner. They are not *third persons,* properly speaking, who must have an *interest* to be *affected* by the acts passed : 1 *Martin, N. S.*, 487 ; 7 *Idem.*, 661 ; 4 *Louisiana Reports,* 239. The plaintiffs are not third persons, as respects the heirs of Turner. They can only be interested in the question, whether Villaverde was divested of title by the sheriff's sale to Thompson. As to the conveyances or transfers of title from Thompson to H. Turner, and the sales and transfers among his heirs to the present defendant, they are neither parties, privies in interest, or in any other manner interested. It is, therefore, concluded, that Villaverde was legally divested of all title by the sheriff's sale, and the plaintiffs, even if they had the right, have no interest to interfere with the title of the defendant.

*Simon, J.,* delivered the opinion of the court.

This case is now before us on a rehearing. It has been ably and elaborately argued, and we have derived from the briefs of the counsel, all the light which could be thrown on the important subject submitted to our consideration.

The view we have taken of this case, renders it unnecessary, however, to inquire again into the validity of Villaverde's will, and into the effect of the act of the Legislative Council of Florida ; as even admitting that the plaintiffs could

WESTERN DIST.
October, 1840.
———
BROSNAHAM
ET AL.
vs.
TURNER.

Where a judgment is set up as the basis of the defendant's title in a petitory action against him, its validity cannot be examined, or inquired into collaterally. Never having been reversed or annulled, it must have its full force and effect.

Where a judgment, writ of execution and a sheriff's sale are shown in support of a title, it necessarily creates a strong presumption in favor of the title; and is *prima facie* evidence that the formalities of law have been complied with.

The law gives no effect to acts of alienation against *third persons* in general, unless they have been duly enregistered. By *third persons* must be understood all persons who are not parties to a contract, by which their *interest* in the thing conveyed is sought to be affected.

be considered as legally claiming in the right of Villaverde, under his pretended will, we have again come to the conclusion, that his title was divested by the sheriff's sale of the property to J. Thompson, under whom the defendant holds.

According to the uniform jurisprudence of this court, we feel no hesitation in saying that the judgment, which is the basis of the defendant's title, and which was rendered but a very short time after the constitution of the state was in force, cannot now be inquired into collaterally in this suit, and that having never been annulled, it must have its full force and effect. The defendant has, therefore, shown a judgment, writ of execution, and sale to J. Thompson under them, and this necessarily creates a strong presumption in favor of his title, which like all other facts, should yield only to the proof of the contrary. They are *primâ facie* evidence, that the formalities of the law have been complied with ; the plaintiff has adduced no proof which would make us entertain even a doubt on this subject, and we must again conclude, that the sale was regular. 8 *Martin,* 682; 3 *Louisiana Reports,* 476; 5 *Idem.,* 486; 9 *Idem.,* 542.

The former decision of this court was, however, a judgment of non-suit, rendered on account of its not having been shown that the acts of sale to the defendant had been recorded in the parish where the property lies, as required by *articles* 2242 and 2417, of the *Louisiana Code.* In this, we think it must be changed. The law gives no effect to acts of alienation against *third persons* in general, unless they have been regularly registered. The *article* 2242 says: against *bonâ fide purchasers* or *creditors,* and this perhaps would show the real meaning of the words, *third persons;* but taking the expressions, *third persons in general,* contained in *article* 2417, in their proper and most strict sense, it seems to us, that by *third parties,* must be understood all persons who are not parties to a contract by which their interest in the thing conveyed is sought to be affected, 1 *Martin, N. S.,* 387 ; 6 *Louisiana Reports,* 4. So, there must be an interest to be affected by the act passed, 7 *Martin, N. S.,* 661 ; 4 *Louisiana Reports,* 239. In this case, we have already said that

Villaverde was divested of his title by the sheriff's sale, and if so, it mattered not to him or to those who claim in his right, whether the vendee at said sale, transferred his title afterwards to others by subsequent sales, as Villaverde's original title to or interest in the thing sold, could never be affected by such transfers. The rule established by the *Code* would receive its proper application, if Thompson, after selling to Turner, had sold the property to other persons who would claim it under him, contradictorily with the defendant; but as to Villaverde, or the plaintiffs claiming under him, it appears to us quite immaterial whether the acts of sale had or had not been recorded, as they could neither be injured or benefited thereby; and we must consider the matter in dispute in the same light it would have been if the controversy had arisen between Villaverde and Thompson the original purchaser at sheriff's sale.

With this view of the subject, we are of opinion that our judgment, instead of being one of non-suit, should be wholly in favor of the defendant.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

WESTERN DIST
October, 1840.

BROSNAHAM
ET AL.
*vs*
TURNER.

So, the debtor whose property is sold at sheriff's sale, or those who claim under him, cannot object that the purchaser's title was not legally conveyed or transferred to the defendant who claims under it.